RMT:SK
F. #2015R00439

FILED
CLERK

2016 AUG -4  PM 4: 52

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

FABIO GASPERINI,

              Defendant.

I N D I C T M E N T

Cr. No. CR 16 - 441

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(a)(2)(B), 1030(a)(2), 1030(a)(4), 1030(b), 1030(c)(2)(A), 1030(c)(2)(B), 1030(c)(3)(A), 1030(i), 1343, 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

GARAUFIS, J.
REYES, M.J.

- - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

Botnets and Click Fraud

      1.      A botnet is a network of computers (such as servers) infected with malicious software without the users' knowledge or authorization. A malicious actor can remotely control the computers (which are described individually as "bots") and draw upon the bandwidth and computing power of the individual bots for many malicious purposes, including to launch denial-of-service attacks, deliver large-scale spam campaigns, transmit viruses or spyware, steal banking credentials or personally identifiable information, perform far-reaching vulnerability scans, perpetrate click fraud, and engage in other acts of cybercrime.

2.      In general, "click fraud" is a type of cybercrime in which a malicious actor fraudulently obtains money from advertising companies and businesses.

3.      Businesses commonly hire online advertising companies to send traffic to their websites. These advertising companies in turn contract with individuals, typically someone who operates a website, to place on the website certain links advertising the businesses' products or services, and are then compensated based upon the number of visitors to the website that click on the link. The advertising companies typically pay the individuals on a per-click basis.

4.      To conduct a click fraud scheme, a malicious actor can, for example, remotely command a botnet to flood a particular website advertisement with electronic communications that register with the advertising company as clicks by a human user on the advertisement. This type of command falsely and fraudulently inflates the number of clicks reported to the advertising companies, causing them to pay for clicks perpetrated by automated bots rather than clicks completed by potential customers who, in fact, viewed and clicked on the advertisements.

The Defendant and the Fraudulent Scheme

5.      The defendant FABIO GASPERINI was an information technology professional in Rome, Italy.

6.      In or about and between February 2011 and June 2016, the defendant FABIO GASPERINI, together with others, surreptitiously gained entry into multiple computer servers (the "compromised servers") in the United States and elsewhere that he did not have permission to access. The compromised servers included computer servers typically used for

3

large-scale data storage and transfer and that could serve various functions including as file servers, cloud-based servers and file transfer protocol servers.

7.      It was a part of the scheme that the defendant FABIO GASPERINI, together with others, accessed the compromised servers without permission and installed on them malicious software that gave him remote access to, and control of, these compromised servers, which together constituted a botnet. In establishing this botnet, GASPERINI also obtained unauthorized access to sensitive data and files stored on the compromised servers.

8.      It was further part of the scheme that the defendant FABIO GASPERINI, together with others, leased computer servers in the United States and elsewhere to manage the botnet. GASPERINI, together with others, used these leased servers to provide instructions and resources to the compromised servers in the botnet.

9.      It was further part of the scheme that the defendant FABIO GASPERINI, together with others, used the botnet to perpetrate, among other things, click fraud. GASPERINI installed on the compromised servers malicious computer scripts that were designed to cause the compromised servers to execute specific commands, and then caused the compromised servers to effect automated clicks on advertisements appearing on particular websites. In doing so, GASPERINI fraudulently generated revenue from advertising companies and businesses.

10.     It was further part of the scheme that the defendant FABIO GASPERINI, together with others, sent and received some of the payments related to click fraud through other individuals in order to conceal the nature of the payments and his identity.

4

## COUNT ONE
(Computer Intrusion)

11. The allegations contained in paragraphs one through ten are realleged and incorporated as though fully set forth in this paragraph.

12. In or about and between February 2011 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FABIO GASPERINI, together with others, did knowingly and with intent to defraud access, and attempt to access, one or more protected computers without authorization, and exceed authorized access, and by means of such conduct did further the intended fraud and obtain something of value, to wit: the use of a computer, information, and United States and foreign currency.

(Title 18, United States Code, Sections 1030(a)(4), 1030(b), 1030(c)(3)(A), 2 and 3551 et seq.)

## COUNT TWO
(Computer Intrusion)

13. The allegations contained in paragraphs one through ten are realleged and incorporated as though fully set forth in this paragraph.

14. In or about and between February 2011 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FABIO GASPERINI, together with others, did knowingly and intentionally access, and attempt to access, one or more computers without authorization and exceed authorized access, and thereby did obtain information from one or more protected computers for the purpose of commercial advantage and private financial gain, and in furtherance of criminal

5

and tortious acts in violation of the laws of the United States and any State, and the value of the information obtained exceeded $5,000.

(Title 18, United States Code, Sections 1030(a)(2), 1030(b), 1030(c)(2)(A), 1030(c)(2)(B), 2 and 3551 et seq.)

## COUNT THREE
(Wire Fraud Conspiracy)

15. The allegations contained in paragraphs one through ten are realleged and incorporated as though fully set forth in this paragraph.

16. In or about and between February 2011 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FABIO GASPERINI, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud advertising companies and businesses, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: remote access of computers and servers in the United States and elsewhere, online payments, credit and debit card transactions, and emails, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

6

## COUNT FOUR
(Wire Fraud)

17. The allegations contained in paragraphs one through ten are realleged and incorporated as though fully set forth in this paragraph.

18. In or about and between February 2011 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FABIO GASPERINI, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

19. On December 8, 2014, for the purpose of executing such scheme and artifice, and attempting to do so, the defendant FABIO GASPERINI did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: a request from a compromised server located in Queens, New York, to a server located outside of New York State, for the transfer of a user agent string.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FIVE
(Money Laundering Conspiracy)

20. The allegations contained in paragraphs one through ten are realleged and incorporated as though fully set forth in this paragraph.

21. In or about and between February 2011 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FABIO GASPERINI, together with others, did knowingly and intentionally

conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of specified unlawful activity, to wit: computer intrusion, wire fraud and wire fraud conspiracy, in violation of Title 18, United States Code, Sections 1030(a)(2), 1030(a)(4), 1343 and 1349, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

22. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i), which require the forfeiture of such person's interest in any personal property that was used or intended to be used to commit or to facilitate the commission of such violation, and any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation.

23. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THREE AND FOUR

  24. The United States hereby gives notice to the defendant that, upon his conviction of either offense charged in Counts Three and Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1349 and 1343.

  25. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FIVE

  26.  The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

  27.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON


_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136