UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

FABIO GASPERINI,

                      Defendant.

**MEMORANDUM & ORDER**

**16-CR-441 (NGG)**

----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Fabio Gasperini's pre-trial motion to suppress (the "Motion"). (Mot. to Suppress ("MTS") (Dkt. 59). Defendant is charged with two counts of computer intrusion, one count of conspiracy to commit wire fraud, one count of wire fraud, and one count of conspiracy to commit money laundering. (See Indictment (Dkt. 3) ¶¶ 11-21.) Defendant moves to exclude evidence obtained pursuant to (1) warrants issued under the Stored Communications Act (the "SCA"), 18 U.S.C. §§ 2701 et seq; (2) a March 26, 2015, warrant issued by Magistrate Judge Marilyn D. Go; and (3) search warrants executed by Italian law enforcement in Italy. (See generally MTS.) For the following reasons, Defendant's motion is DENIED.

## I.    BACKGROUND

The court assumes familiarity with the allegations against Defendant, which are discussed at greater length in the court's most recent opinion. (See May 31, 2017, Mem. & Order (Dkt. 45) at 2-3.) Accordingly, the court recites only the facts that are relevant to the present motion.

### A.    Warrants for Electronic Communications and Related Information

The Government's investigation of Defendant began in 2015. (Gov't Opp'n to MTS ("MTS Opp'n") (Dkt. 71) at 5.) Pursuant to the SCA, the Government obtained multiple search

warrants for Google email accounts associated with Defendant (the "SCA Warrants"). (Id.) In support of the Government's first SCA Warrant application, Federal Bureau of Investigation ("FBI") Special Agent George Schultzel prepared an affidavit (the "Schultzel Affidavit") which included observations by a confidential informant who claimed to have observed computers infected by malicious software. (Id.; see also March 26, 2015, Warrant ("Mar. Warrant"), Ex. A to MTS (Dkt. 59-1) at ECF pp.3-10.) Based on that application, Judge Go issued a warrant (the "March 2015 Warrant") permitting searches of "information associated with 'gaspoplo@gmail.com' that is stored at the premises owned, maintained, controlled, or operated by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043." (Mar. Warrant at ECF pp.1, 13.) The Government obtained subsequent five subsequent SCA Warrants. (MTS Opp'n at 5.)

Prior to the issuance of the final SCA Warrant, the Second Circuit issued its decision in In re Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp. ("Microsoft"), 829 F.3d 197 (2d Cir. 2016). The panel held that the SCA's reach is limited by the presumption against extraterritoriality, such that warrants issued under that act cannot reach data stored on servers located outside of the United States. Id. at 220-22. Responding to the sole post-Microsoft warrant, Google stated that its production in that instance included only responsive records stored on U.S. servers. (Google Ltr., Ex. B. to MTS Opp'n (Dkt. 71-2).)

**B.    Searches by Italian Authorities**

The Government provided information related to the present prosecution to Italian law enforcement officials in June 2016. (MTS Opp'n at 6.) The Government also requested that Italian authorities conduct a search of Defendant's home in Italy. (Id.) Italian law enforcement conducted the search with FBI agents present. (Gov't Sur-Response to MTS Opp'n (Dkt. 85) at 1.)

## II.    DISCUSSION

Defendant asks the court to suppress all evidence obtained pursuant to (1) the SCA Warrants; (2) the March 2015 Warrant specifically; and (3) searches conducted by Italian law enforcement.  (See MTS at 1-2.)  In the alternative, Defendant requests an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to evaluate alleged misstatements in the Schultzel Affidavit.  (MTS at 1.)  The court addresses these elements of the Motion in turn and concludes that Defendant is not entitled to any of the relief sought.

### A.    Information Obtained Pursuant to the SCA Warrants

Defendant argues that all information obtained from foreign servers controlled by Google, including Defendant's emails and other information, must be suppressed based on the Microsoft decision.  (MTS at 2-5.)  The court concludes that, even taken as true, Defendant fails to provide facts that would justify suppression of any evidence obtained in violation of the SCA and dismisses the Motion on that ground.

### 1.    The SCA and the Microsoft Decision

The SCA provides privacy protection for, inter alia, certain electronic communications in the possession of third parties that provide communications services to the public ("service providers").[1]  See, e.g., Orin S. Kerr, A User's Guide to the Stored Communications, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1213 (2004).  Among its many provisions and protections, the SCA limits the Government's ability to require service providers to disclose their users' content and information.  See 18 U.S.C. § 2703.  As relevant here, the Government may compel service providers to disclose the contents of users' electronic

---

[1] Specifically, the SCA refers to two different types of service providers:  providers of electronic communications services and providers of remote computing services.  See Orin S. Kerr, A User's Guide to the Stored Communications, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1214 (2004).  While the protections afforded by the SCA sometimes vary based on the type of service provider at issue, that distinction is not relevant to consideration of the motion at hand.

communications by obtaining a warrant that complies with the Federal Rules of Criminal Procedure. Id. § 2703(a), (b)(1)(A).

In Microsoft, the Second Circuit held that (1) the SCA's warrant provisions do not apply extraterritorially; and (2) the SCA does not permit issuance and enforcement of a warrant against U.S.-based service providers to obtain contents of electronic communications stored abroad. Microsoft, 829 F.3d at 222. With respect to the second of these points, the court found that the SCA's "focus" was on the "privacy of stored communications." Id. at 217. From this, the panel determined that "the invasion of the customer's privacy takes place under the SCA where the customer's protected content is accessed—here, where it is seized by Microsoft, acting as an agent of the government." Id. at 220. Accordingly, the court concluded that "execution of [a warrant seeking data stored outside the United States] would constitute an unlawful extraterritorial application of the act." Id.

2.      Defendant's Objection to the SCA Warrants

Defendant argues that the Second Circuit's decision in Microsoft requires suppression of all information obtained in reliance on the SCA Warrants. In support of this contention, Defendant states that he "lived in Italy at all times, making it more than likely that the vast majority of [Defendant's] emails and information was stored in Google's foreign servers."[2] (MTS at 5.) The Government argues that Defendant provides neither a sufficient factual nor legal basis for suppression. (MTS Opp'n at 6-12.) The court concludes that Defendant is not

---

[2] Defendant makes the separate but related argument that the extraterritorial application of the SCA should be limited by "principles of international comity." (Reply in Supp. of MTS ("MTS Reply") (Dkt. 78) at 4-6.) This argument is beside the point in the current context, however. The extraterritorial reach of the SCA is already limited by Microsoft, and the relevant question is whether evidence obtained in violation of that limitation must be excluded.

entitled to suppression, as he alleges at most a statutory violation of the SCA that does not require exclusion of evidence.

Statutory violations of the SCA, without more, are not remedied through exclusion of the resulting evidence in court. The text of the SCA itself states that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708. The SCA's enumerated remedies do not include suppression, [3] and numerous courts have held that defendants claiming only statutory violations of the SCA are not entitled to exclusion of the collected evidence. See, e.g., United States v. Scully, 108 F. Supp. 3d 59, 88 (E.D.N.Y. 2015) (collecting cases); United States v. Guerrero, 768 F.3d 351, 358 (5th Cir. 2014); United States v. Powell, 444 F. App'x 517, 520 (3d Cir. 2011) (unpublished opinion).

While Defendant argues that the Government's alleged violations of the SCA amounted to violations of his Fourth and Fifth Amendment rights (Reply in Supp. of MTS ("MTS Reply") (Dkt. 78) at 7-8), his arguments in support of this assertion are unavailing. The Fourth Amendment has no application to searches conducted abroad where the subject is a foreign national who lacks substantial or voluntary connections to the United States. See United States v. Verdugo-Urquidez, 494 U.S. 259, 274-75 (1990); see also In re Terrorist Bombings of U.S. Embassies in E. Africa (Fourth Amendment Challenges), 552 F.3d 157, 168 (2d Cir. 2008) (stating that, under Verdugo-Urquidez, "the Fourth Amendment affords no protection to aliens searched by U.S. officials outside of our borders"). As Defendant has consistently emphasized, he lacked any connection to the United States prior to his extradition into this country. (See, e.g.,

---

[3] The SCA provides for both civil and criminal remedies. See 18 U.S.C. §§ 2701(b), 2707; see also United States v. Scully, 108 F. Supp. 3d 59, 88 (E.D.N.Y. 2015).

Mot. to Dismiss (Dkt. 9) at 7.)  As such, he cannot claim that searches of his data stored outside the U.S. violated his Fourth Amendment rights.  Though the Fifth Amendment does apply to foreign nationals prosecuted in the United States, see, e.g., In re Terrorist Bombings of U.S. Embassies in E. Africa (Fifth Amendment Challenges), 552 F.3d 177, 199-200 (2d Cir. 2008), Defendant raises no colorable argument that the use of evidence obtained in reliance on the SCA Warrants violates his rights under that amendment.  He points only to the Microsoft opinion's language regarding the "focus" of the SCA (see MTS at 8), which contemplated the presumption against territoriality (a canon of statutory construction) without discussing any constitutional considerations.[4]

Accordingly, the court concludes that suppression is not warranted as to evidence obtained in reliance on the SCA Warrants.

**B.    Objections to the March 2015 Warrant**

Defendant separately argues that evidence obtained pursuant to the SCA Warrants, and particularly the March 2015 Warrant, should be suppressed because the Government engaged in outrageous conduct that "shock[s] the conscience" in violation of the Due Process Clause.[5]  (See

---

[4] Defendant also argues that the SCA Warrants did not extend to information stored abroad, pointing to the statement in the warrant that it extended to all information related to the subject email address "that is stored at premises owned, maintained, controlled, or operated by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043." (MTS at 5; see also Mar. Warrant at ECF p.13.) Defendant states that the warrant should not be read to extend to data stored abroad, "as historically 'warrants' issued by U.S. judges do not run to other countries," and so the Government's use of that warrant to obtain data stored outside of the U.S. was unreasonable. (MTS at 6.) However, the language of the warrant does not suggest the geographic limitation proposed by Defendant, and other courts appear to have treated warrants with similar language as applying to data controlled by the warrant's recipient, regardless of the location of the data. See, e.g., In the Matter of the Search of Information Associated with [Redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc., — F. Supp. 3d —, No. 16-MJ-757 (GMH), 2017 WL 2480752, at * (D.D.C. June 2, 2017) ("The Warrant makes no mention of the location of the Google server or servers on which the records . . . are stored . . . "); In re Information Associated with One Yahoo email address that is Stored at Premises Controlled by Yahoo, No. 17-M-1234, No. 17-M-1235; 2017 WL 706307, at *2 (E.D. Wis. Feb. 21, 2017) ("In neither [warrant] application does th[e] government state that it knows where the data sought might be stored, although both state that it is possible that some of the information sought may be stored on servers located outside of the United States.")

[5] Defendant also argues at one point that the court should exclude the evidence in the exercise of its "supervisory powers," but he does not present any separate arguments in support of that point. (See MTS at 6.)

MTS at 6-17.) Defendant alleges various transgressions by the Government and the confidential

information cited in the Schultzel Affidavit (the "CI"):

> (1) the Government relied solely on a confidential informant that was never established as reliable;
>
> (2) the confidential informant was not competent, let alone an expert;
>
> (3) the confidential informant deliberately misrepresented material facts with a reckless disregard for the truth;
>
> (4) the confidential informant based conclusions on uncorroborated assumptions based on facts never established;
>
> (5) the Government never bothered to verify or corroborate the confidential informant's false factual premises and conclusions;
>
> (6) the Government was present with Italian authorities when the defendant's residence in Rome, Italy was searched and evidence was seized, but still has refused to turn over the Italian search warrant in discovery; and
>
> (7) the Government enlisted Italian authorities to act as their agents.

(Id. at 7.) Alternatively, Defendant requests a hearing pursuant to Delaware v. Franks, 438 U.S.

154 (1978), regarding the March 2015 Warrant, which he claims was improperly obtained

through misrepresentations and misstatements by the CI and FBI in the Schultzel Affidavit. (Id.)

The court concludes that neither suppression nor an additional evidentiary hearing is merited.

> 1.    Outrageous Government Conduct

Defendant first contends that the Government's conduct during the investigation merits

suppression of all evidence obtained in connection with the SCA Warrants. Under very limited

circumstances, government conduct in the course of an investigation may violate a Defendant's

right to due process and require suppression of evidence or even dismissal of claims. See, e.g.,

United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999). "[O]nly Government conduct that

'shocks the conscience' can violate due process." Id. (citation omitted). Defendants bear the

burden of proving outrageous government conduct, United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013), and that burden is "very heavy," Rahman, 189 F.3d at 131. "Generally, to be 'outrageous,' the government's involvement . . . must involve either coercion or a violation of the defendant's person." United States v. Al Kassar, 660 F.3d 108, 121 (2d Cir. 2011). Relief based on outrageous government conduct is reserved for the most extreme examples. See, e.g., United States v. Chin, 934 F.2d 393, 398-99 & n.4 (2d Cir. 1991) (citing "[e]xtreme physical coercion" and "psychological torture" as potential examples of outrageous government conduct).

Defendant falls well short of the required showing. Even if credited, Defendant's allegations—that the Government presented an affidavit that contained affirmative misstatements by the CI, failed to verify the CI's allegations, participated in a foreign law enforcement search, and failed to provide the foreign warrant in discovery—do not constitute the kinds of "coercion or violation of the defendant's person" that may form the basis for a claim of outrageous government conduct. Moreover, many of Defendant's allegations of misconduct in connection with obtaining the warrant are better considered under the Franks framework, discussed below. Accordingly, Defendant's request to suppress evidence based on outrageous government conduct is denied.

2.    Objections to the March 2015 Warrant Affidavit

Defendant moves the court to conduct a hearing to address alleged misstatements and omissions in the Schultzel Affidavit, which he alleges undercut the required showing of probable cause as to the March 2015 Warrant. (See MTS at 8.) Submitted in connection with the March 2015 Warrant application, the Schultzel Affidavit lists statements made by "a confidential source working with the FBI," including the CI's observations of infections of servers with malware and steps taken by the infected servers thereafter. (Mar. Warrant at ECF pp.3-4, ¶¶ 5-9.) Schultzel also states his own understanding, based on his "knowledge, training, and experience," that these

8

operations were "typically used to further 'click fraud.'" (Id. at ECF p.4 ¶ 8.) Defendant claims

that the Schultzel Affidavit contains multiple "deliberately false" statements by the CI and

provides two affidavits purporting to support his allegations. (See MTS at 8.) Defendant further

contends that the failure by Schultzel himself to identify both those alleged misstatements, as

well as two typos in the affidavit, shows that he did not corroborate the CI's information though

independent investigation. (Id. at 15.)

        a.       *The Franks Standard for Challenging Warrant Applications*

      Where a defendant claims that a warrant was secured by an inaccurate or misleading

affidavit, the court's consideration is guided by the framework set by Franks v. Delaware. Under

that framework, evidence may be suppressed if the defendant shows that: "(1) the claimed

inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard

for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's

probable cause . . . finding." United States v. Rajaratnam ("Rajaratnam III"), 719 F.3d 139, 146

(2d Cir. 2013) (internal quotation marks and citation omitted). Under the second prong of the

test, courts must determine whether "setting aside the falsehoods, what remains of the affidavit is

insufficient to support a finding of probable cause." United States v. Coreas, 419 F.3d 151, 155

(2d Cir. 2005). "Omissions are governed by the same rules as misstatements," Rajaratnam III,

719 F.3d at 146 (internal quotation marks and citations omitted); however, "[a]n affiant cannot

be expected to include . . . every piece of information gathered in the course of an

investigation. . . . [and] Franks protects [only] against omissions that are designed to mislead, or

that are made in reckless disregard of whether they would mislead, the magistrate," United States

v. Awadallah, 349 F.3d 42, 67-68 (internal quotation marks and citation omitted).

      Suppression motions based on Franks are properly addressed through an evidentiary

hearing in which "the defendant is entitled . . . to test the veracity of the affiant's statements."

United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008). However, a defendant is not automatically entitled to such a hearing and must first make a "substantial preliminary showing" that the two prongs of the Franks test are satisfied. Id. But see United States v. Rajaratnam ("Rajaratnam I"), No. 09-CR-1184 (RJH), 2010 WL 3219333, at 1 & n.1 (S.D.N.Y. Aug. 12, 2010) (concluding that Franks requires a substantial preliminary showing only as to the first prong of the analysis but acknowledging that the Second Circuit "has assumed" the showing must be made as to both prongs). In order to make this "substantial preliminary showing":

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks, 438 U.S. at 171.

### b.  Application

While Defendant alleges at least six separate misstatements or omissions, only two merit discussion and neither warrants an evidentiary hearing. First, Defendant points to the statement that the CI observed a file downloaded by the malware "repeatedly issuing commands that would effect a click on an ad . . . ." (See Mar. Warrant at ECF p.6 ¶ 8 (emphasis added).) Defendant presents an affidavit from a purported information technology expert stating that "there is no repetition for this click fraud task in the script" and that the CI's statement to the contrary "is deliberately false." (Wong Aff., Ex. B to MTS (Dkt. 59-2) ¶ 33.) Defendant argues that the absence of repetition undercuts the probable cause determination, as the issuance of repeated commands would lead a "reasonably prudent Magistrate [to] believe that criminal activity was

ongoing." (MTS at 11.)  Whether there was repetition is irrelevant,[6] however: evidence of any click command in furtherance of the fraud would provide probable cause to believe a crime was committed.  Defendant does not allege that there was no click command, and so his argument on this point fails to satisfy the second prong of the Franks test.

Defendant also alleges that the Schultzel Affidavit misleadingly omits details concerning the connection between the malware and Defendant's computer.  (MTS at 12.)  The Schultzel Affidavit states that the server "pushing" one of the files downloaded onto infected computers originated from a computer in Italy.  (See Mar. Warrant at ECF p.6 ¶ 7.)  Defendant argues that this statement misleadingly suggests that the Italian computer was the "source" of the file or the "host" of the central control panel that issued commands to infected servers.  (See MTS at 12.) On this point, Defendant fails to satisfy the first prong of the Franks standard.  While Defendant contends that admittedly accurate statements in the Schultzel Affidavit should have been accompanied by a non-criminal alternate explanation or elaboration, he offers no basis to conclude that this omission was "designed to mislead, or [] made in reckless disregard [of its potential to] mislead, the magistrate."  Awadallah, 349 F.3d at 68 (internal quotation marks and citation omitted).

The other misstatements and omissions alleged by Defendant do not fit within the Franks framework.  Defendant cites several omissions without suggesting that they render the affidavit erroneous or misleading, instead implicitly attacking the magistrate judge's finding of probable cause absent any wrongdoing by the affiant.  (See MTS at 8 (identifying failure to assert basis for CI's reliability); id. at 9-10 (challenging the CI's expertise based on information not referenced

---

[6] In its opposition, the Government insists that "there [was] repetition" but appears to concede that the repetition may have been manually directed and not automatic, as suggested by the affidavit.  (MTS Opp'n at 14.)

in the affidavit); id. at 13-15 (suggesting an alternate, non-criminal explanation for certain information connecting Defendant to the click fraud).) Defendant also points to two typos and misplaced "boilerplate" language in the affidavit that he alleges demonstrate that the FBI did not independently corroborate the information contained therein. (Id. at 15-17.) These errors do not appear to be intentional or reckless misstatements, however, and so do not merit suppression. See Franks, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient.").

For the foregoing reasons, Defendant's motion for a Franks hearing is denied.

## C.    Information Obtained from Italian Law Enforcement

Defendant separately seeks suppression of all information gathered by Italian police on the basis that those officers were acting as "agents" of the Government in a scheme "designed to evade constitutional requirements."[7] (MTS at 18.) Defendant's argument is rooted in an Italian law enforcement report, which describes a search warrant executed at Defendant's residence in Rome. (Id.) The report states that two FBI agents were present for the search. (Id.; see also Italian Warrant, Ex. D to MTS (Dkt. 59-4); Bertollini Aff., Ex. E to MTS (Dkt. 59-5) ¶¶ 4-8.)

Defendant's argument is meritless. As previously noted, the Fourth Amendment does not apply to searches abroad that target persons, such as Defendant, who lack substantial or voluntary connections to the United States. Verdugo-Urquidez, 494 U.S. at 275-76. This is the case even where the search is conducted directly by U.S. agents. Id. For the same reason, the Fourth Amendment's exclusionary rule does not apply to the fruits of those searches, including

---

[7] Defendant also asks the court to compel the Government to provide copies of the Italian search warrant used in the search of Defendant's apartment. (MTS at 17-18.) The Government states that it is not in possession of the search warrant (MTS Opp'n at 16), and notes that Defendant has apparently been in possession of the Italian search warrant left with Defendant's family in Rome "since at least June 7, 2017," (Sur-Response to MTS (Dkt. 85) at 1-2). While Defendant continues to insist that he should have received additional documents connected to the Italian law enforcement searches (Sur-Reply to MTS (Dkt. 87)), the Government's representation that it does not have the requested documents is sufficient to defeat any motion to compel. See United States v. Lee, 723 F.3d 134, 141 (2d Cir. 2013) (holding defendant was not entitled to foreign law enforcement documents that were "not even within the 'government's possession, custody, or control.'" (quoting Fed. R. Crim. P. 16(a)(1)(E)).

where that evidence is seized by foreign law enforcement officials. See, e.g., United States v. Defreitas, 701 F. Supp. 2d 297, 304 (E.D.N.Y. 2010); United States v. Vega, No. 07-CR-707 (ARR), 2012 WL 1925876, at *4-5 (E.D.N.Y. May 24, 2012). Given that the same evidence would not be subject to suppression if it were seized directly by U.S. officials, Defendant plainly cannot seek exclusion on the basis that Italian law enforcement officers were acting as the Government's "agents."[8]

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to suppress (Dkt. 59) is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     July 13, 2017

NICHOLAS G. GARAUFIS
United States District Judge

---

[8] Defendant separately contends that "evidence seized aboard should be suppressed because the Italian authorities expressly recognized that it belongs to [Defendant's brother], and not to Defendant." (MTS at 18.) Defendant does not explain why this would necessitate suppression, however.