UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,                    **MEMORANDUM & ORDER**

-against-                                    **16-CR-441 (NGG)**

FABIO GASPERINI,

Defendant.

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Fabio Gasperini is charged with two counts of computer intrusion, one count of conspiracy to commit wire fraud, one count of wire fraud, and one count of conspiracy to commit money laundering.  (See Indictment ("Ind.") (Dkt. 3) ¶¶ 11-21.)  The charges stem from Defendant's alleged creation of a "botnet" to further a "click fraud" perpetrated against advertising companies.  (Id. ¶¶ 1-10.)  Stated briefly, the Government alleges that Defendant and others obtained unauthorized access to computers in the U.S. and around the world and remotely directed those computers to fraudulently inflate the number of times that online advertisements were "viewed."  The court assumes familiarity with the allegations against Defendant, which are discussed in previous opinions.  (See, e.g., May 31, 2017, Mem. & Order (Dkt. 45) at 2-3.)

Defendant has filed numerous motions in limine seeking exclusion of certain proposed trial evidence.  (1st Mot. in Lim. ("1st MIL") (Dkt. 65); 2d Mot. in Lim. ("2d MIL") (Dkt. 105); 3d Mot. in Lim. ("3d MIL") (Dkt. 111).)  For the reasons set forth below, Defendant's motions in limine are GRANTED IN PART and DENIED IN PART, with ruling on certain questions RESERVED until trial.

1

## I.    LEGAL STANDARD

### A.    Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41. The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion in limine. See United States v. Pugh, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

### B.    Relevance and Prejudice

The admissibility of evidence at trial is determined by the Federal Rules of Evidence, and only relevant evidence may be admitted. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. This standard imposes a "very low" bar. United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). Even where it is determined to be relevant, evidence may be excluded if the court determines that "its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II.    DEFENDANT'S MOTIONS

### A.    Objections to Expert Testimony and Other Testimony

#### 1.    Testimony Regarding Cybercrime, Botnets, and Malware

In its initial notice of proposed expert witnesses, the Government stated that it expected

to call an expert[1] to testify regarding:

> general terminology related to cybercrime, including botnets, click
> fraud scripts, malware, servers, the Shellshock vulnerability and
> other terms material to the charges against the defendant. In
> addition, the government anticipates that [the expert witness] will
> testify about the operation and capabilities of botnets and malware
> generally as well as the operation and capability of the malware and
> botnet employed by the defendant in this case.

(See May 23, 2017, Gov't Ltr. ("Expert Disclosure Ltr.") (Dkt. 38) at 2.)  Defendant raises three

general objections to this proposed testimony, which are discussed separately below.

##### a.    *Background Testimony Regarding Cybercrime, Botnets, and Malware*

Defendant first contends that general testimony providing background regarding

cybercrime, botnets, and malware is irrelevant and may prejudice or confuse the jury.  (1st MIL

at 1-2.)  The court disagrees.  Despite its sometimes tenuous relationship to "disputed matter,"

background evidence and testimony is "universally offered and admitted as an aid to

understanding" and treated as relevant.  See Fed. R. Evid. 401 advisory committee notes.  While

the proffered expert testimony here does not directly implicate the allegations against Defendant,

---

[1] The Government initially stated that this testimony would be provided by either Ovie Carroll or Joe Variani.  (See May 23, 2017, Gov't Ltr. ("Expert Disclosure Ltr.") (Dkt. 38) at 2.)  Defendant objected on the grounds that this testimony could be provided by other witnesses.  (1st MIL at 1.)  In its response, the Government agreed with Defendant's position and stated that the testimony will instead be provided by Dr. Johannes Ulrich, who was also previously noticed as an expert witness.  (Gov't Opp'n to 1st MIL ("MIL Opp'n") (Dkt. 93) at 8.)

it provides background regarding the sometimes obscure technology and concepts at issue in the case, including malware, botnets, and server operations, and other terms that are likely to be unfamiliar to the average juror. The court views this proposed testimony as relevant and helpful, and sees no overriding potential for prejudice or confusion evident at this juncture. Defendant's motion to exclude background testimony regarding cybercrime, malware, botnets, and related terms and concepts is therefore DENIED.

> b.    *Testimony Regarding the Capabilities of the Botnet and Malware*
> *Allegedly Employed by Defendant*

Defendant next argues that testimony regarding the capabilities of the specific malware and botnet that he allegedly employed is both irrelevant and more prejudicial than probative. (1st MIL at 2.) Defendant contends that testimony regarding those capabilities without further context does not touch on the actual employment of malware and botnet alleged to have occurred in this case and so is not consequential to the action. (Id.) The Government responds that it will limit the expert testimony to the actual capabilities of the botnet at issue, which it argues are relevant the "value" obtained as a result of the alleged computer intrusions. (Gov't Opp'n to 1st MIL ("MIL Opp'n") (Dkt. 93) at 8-9.) The Government's proposed basis for introducing testimony establishes that the proffered evidence is clearly relevant, as it goes directly to the elements the Government must prove to secure a conviction on the charged counts. See, e.g., (stating that computer intrusion must lead to obtaining "anything of value"). To the extent that Defendant argues that testimony regarding general botnet capabilities risks prejudicing or confusing jurors by presenting them with far-flung harms, the Government appears to address this concern by limiting the testimony to "the capabilities of the specific botnet that defendant built, and not [] capabilities that are merely speculative." (MIL Opp'n at 8.) Defendant's motion to exclude testimony the capabilities of his alleged botnet and malware is therefore DENIED.

4

*c.    Hearsay*

Lastly, Defendant contends that the proposed testimony is hearsay because the

Government does not state that the expert has personally reviewed the malware, botnet, or

servers at issue here.  (1st MIL at 2.)  In response, the Government clarifies that the expert has,

in fact, viewed the malware at issue.  (MIL Opp'n at 9.)  Based on this representation,

Defendant's motion to exclude testimony regarding the malware and botnets is DENIED.

### 2.    Testimony of Dr. Johannes Ulrich

Defendant moves to limit the testimony of Dr. Johannes Ulrich, which the Government

states will cover:

> [Ulrich's] review of findings from one of SANS' "honeypots," i.e.,
> a computer security mechanism used to research online and
> computer- based threats and identify means to better protect against
> such threats. . . . [as well as] his observations that certain Network
> Attached Storage devices were being targeted through the
> Shellshock vulnerability.

(Expert Disclosure Ltr. at 1-2.)

Similar to the previous motion, Defendant moves to exclude testimony regarding

"computer-based threats and the means to protect against such threats," claiming that this general

testimony is irrelevant to the allegations against him.  (1st MIL at 4.)  The Government has

clarified that Ulrich's testimony will be specific to "how he detected the defendant's malicious

software (using a detection mechanism called a 'honeypot') and his analysis of that malicious

software."  (MIL Opp'n at 10.)  Presented in this way, the proposed testimony analyzing the

malware at issue is clearly relevant to the charges against Defendant.  Accordingly, Defendant's

motion to exclude that testimony is DENIED.

Defendant separately moves to limit Ulrich's testimony to exclude references to servers

from which the Government does not allege information was obtained.  (1st MIL at 4.)

Defendant argues that testimony is irrelevant because he "has not been charged with attempt, and therefore an attempted intrusion is <u>not</u> an element of any of the charges." (<u>Id.</u>) However, as the Government points out, several of the counts include charges of attempt. (MIL Opp'n at 10-11 (citing Ind. ¶¶ 12, 14, 19).) Testimony regarding observations of alleged attempts are thus directly relevant to the charges against Defendant. Defendant's motion to exclude testimony regarding servers from which no information or other objects of value were obtained is therefore DENIED.

### 3.    Testimony of Stuart Gorton

Defendant seeks to exclude the testimony of Stuart Gorton on the basis that "he is not an expert." (1st MIL at 3.) The Government's initial list of potential expert witnesses included Gorton. (<u>See</u> Expert Disclosure Ltr. at 2.) In response to Defendant's motion, however, the Government states that it "presently intends to call Mr. Gorton as a fact witness."[2] (MIL Opp'n at 9.) Defendant's motion to exclude Gorton's testimony is DENIED as moot.

### 4.    Italian Linguists

In its expert disclosure, the Government informed Defendant that it would seek to introduce testimony from Italian linguists regarding their own translations or the accuracy of others' translations of Italian language documents. (Expert Disclosure Ltr. at 3.) Defendant argues that the court should exclude the testimony of the linguists, as their identities have not been disclosed to Defendant, preventing him from assessing their qualifications. (1st MIL at 7.) After Defendant filed his motion, the Government disclosed the names of its proposed linguist witnesses (Gov't Witness List (Dkt. 109) at 4), and indicated that it will "elicit their

---

[2] The Government states, however, that it "reserves the right to call Mr. Gorton as an expert." (MIL Opp'n at 9.) If the Government seeks to adduce expert testimony from Gorton, Defendant may renew his motion to exclude Gorton's expert testimony at that time.

qualifications during direct testimony" (MIL Opp'n at 13). In light of this disclosure, the court DENIES Defendant's motion to exclude the linguists' testimony as moot.

### 5.   Testimony Regarding the New Jersey Server

Defendant seeks exclusion of proposed testimony analyzing a server allegedly operated by Defendant in connection with the charged computer intrusions. (1st MIL at 3-4.) He contends that the Government "constructively denied" him access to that server by failing to provide access to "forensic tools" that Defendant claims are needed to view the contents of the server. (Id. at 4.) The court already considered and rejected the same argument in the context of Defendant's motion to compel. (See July 6, 2017, Hr'g Tr. (Dkt. 96) 21:6-25.) Defendant has received access to the "virtual image file" containing the contents of that server, as well as reports by Government witnesses analyzing the file. (Id. 19:6-22.) There has therefore been no constructive denial of access, and the motion to exclude testimony regarding the contents of the server on that basis is DENIED.

### B.   Objections to Documentary and Electronic Evidence

### 1.   Italian Language Documents

Defendant seeks exclusion of "all [] documents in a foreign language for which a certified translation has not been provided." (1st MIL at 7.) The Government's response does not indicate whether it has provided Defendant with copies of certificated translations of all proposed foreign language trial exhibits. To the extent that it has not already done so, the Government is ORDERED to provide Defendant with any certified translations that it seeks to introduce at trial by no later than July 22, 2017. Any foreign language documents for which certified translations are not provided by this deadline will be held inadmissible at trial.

2.    Defendant's Emails

Defendant moves to exclude the entire contents of email accounts attributed to
Defendant.  (1st MIL at 4-6.)  He argues that those documents have not been properly
authenticated and, separately, that they constitute inadmissible hearsay.[3]  The court addresses
these points separately.

a.    *Authentication*

Defendant first argues that the emails should be held inadmissible, as they have not been
and cannot be properly authenticated.  (Id. at 5.)  Defendant contends that email communications
can only be authenticated by testimony of the author or another party who observed the drafting
and sending of the message.  (Id.)  The Government counters that authentication of emails can
and will be provided through circumstantial evidence.[4]  (MIL Opp'n at 11.)

"Under Federal Rule of Evidence 901(a), the burden rests on the proponent of
documentary evidence to provide 'sufficient evidence to support a finding that the matter in
question is what the proponent claims.'"  Bell v. Rochester Gas & Elec. Co, 329 F. App'x 304,
306 (2d Cir. 2009) (summary order) (quoting Fed. R. Evid. 901(a)).  "The proponent carries his
burden by introducing 'sufficient proof . . . [allowing] a reasonable juror [to] find in favor of
authenticity.'"  Id. (quoting United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir. 1991)
(internal quotation marks omitted; alterations in original).  "[P]roof of authentication may be
direct or circumstantial."  Al-Moayad, 545 F.3d at 172.  "The proponent need not rule out all

---

[3] Defendant also claims that the Government "intends to introduce entire email accounts allegedly belonging to
Defendant" at trial and argues that "the majority of these . . . emails are grossly irrelevant" and should therefore be
excluded.  (1st MIL at 4-5.)  In response, the Government clarifies that it "does not intend to offer entire email
accounts into evidence."  (MIL Opp'n at 11.)

[4] The Government does not state what circumstantial evidence it intends to provide to authenticate those documents.
The Government's brief does state, however, that it intends to "demonstrate, through subscriber records and the
contents of the accounts, that the accounts belong to the defendant" for hearsay purposes.  (MIL Opp'n at 11.)

possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is

what it purports to be." United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007) (internal

quotation marks and citation omitted).

The court is unaware of any authority that authentication of emails can only come

through a witness with direct knowledge of the drafting, and Defendant provides none. Rather,

courts considering the admissibility of electronic documents and communications have held that

"'evidence may be authenticated in many ways' and 'the type and quantum of evidence

necessary to authenticate [electronic sources] will always depend on context.'" United States v.

Ulbricht, 79 F. Supp. 3d 466, 487-88 (S.D.N.Y. 2015) (quoting United States v. Vayner, 769

F.3d 125, 133 (2d Cir. 2014)). The court concludes that the Government may authenticate the

emails through circumstantial evidence and DENIES the motion to exclude those emails.

>           b.      Hearsay

Defendant next objects that emails from the accounts attributed to him must be excluded

as inadmissible hearsay. (1st MIL at 5-6.) Defendant's argument is misplaced, however.

Leaving aside the authentication question noted above, emails sent by Defendant are admissible

for their truth as statements of a party-opponent. See Fed. R. Evid. 801(d)(2)(A). While the

same reasoning does not apply to emails received by Defendant, those messages may be

introduced for a purpose other than the truth of the matters asserted, such as providing context

for Defendant's emails. See, e.g., United States v. Dupree, 462 F.3d 131, 136-37 (2d Cir. 2006).

Without knowing the particular emails proffered or the purpose for which the Government seeks

their introduction, the court cannot conclude that they must be excluded.[5]  Accordingly, the court

RESERVES DECISION on Defendant's motion to exclude emails as inadmissible hearsay.

### 3.    Email Accounts of Alleged Co-Conspirators

Defendant moves to exclude emails from accounts associated with Defendant's alleged,

uncharged co-conspirators. (1st MIL at 6.) He argues that those statements do not satisfy the

requirements of the co-conspirator exception to the hearsay rule, as the Government can only

prove the existence of the conspiracy based on the hearsay itself. (Id. at 6-7.)  The Government

responds that, as an initial matter, it will establish the existence of the conspiracy through

Defendant's own admissions.[6]  (MIL Opp'n at 12.)

Under the Federal Rules of Evidence, out of court statements made by a party's co-

conspirator "during and in furtherance of the conspiracy" may be introduced for their truth

against that party.  Fed. R. Evid. 801(d)(2)(E).  The proponent of the statements must

demonstrate by a preponderance of the evidence both the existence of a conspiracy between the

declarant and the party and that the statement was in furtherance of that conspiracy.  Bourjaily v.

United States, 483 U.S. 171, 175-76 (1987).  "[W]hile the hearsay statement itself may be

considered in establishing the existence of the conspiracy, there must be some independent

corroborating evidence of the defendant's participation in the conspiracy."  United States v.

Gigante, 166 F.3d 75, 82 (2d Cir. 1999) (internal quotation marks and citation omitted).  The

degree of corroboration needed may vary depending on the degree to which the hearsay evidence

---

[5] To the extent that either party seeks to introduce out-of-court statements for a purpose other than the truth of the matter asserted, the opposing party may object at that time and request that the court issue an appropriate limiting instruction to the jury.

[6] The Government also states that it will offer co-conspirator statements as responses to Defendant's own statements as "context" for his emails. (MIL Opp'n at 12.)  This purpose does not implicate hearsay concerns because the relevance of the emails is not based on the truth of the matters asserted therein. See Dupree, 462 F.3d at 136-37 (holding that emails offered for context are not subject to exclusion as hearsay).

implicates the defendant in the conspiracy. See United States v. Padilla, 203 F.3d 156, 162 (2d Cir. 2000).

At this stage, the court lacks sufficient information to predetermine the admissibility of co-conspirator statements. In as much as Defendant's position is that the Government cannot prove a conspiracy based solely on his co-conspirators' hearsay statements, that position is effectively rebutted by the Government's assertion that it will offer Defendant's own statements to lay the foundation for the existence of a conspiracy. The Government's representation alone is not, however, sufficient to demonstrate that it will be able to prove the existence of a conspiracy involving Defendant by a preponderance of the evidence. Accordingly, the court RESERVES DECISION on objections to the admission of co-conspirator statements until such time as those statements are offered.

### 4.    Evidence Obtained From Hard Drives Seized Abroad

Defendant seeks exclusion of hard drives seized from his apartment in Italy. (1st MIL at 9.) Defendant first attacks the admissibility of those items based on their relevance and potential prejudice, arguing that the Government has failed to show that the hard drives were in fact Defendant's and contending that they in fact belonged to his brother, an uncharged co-conspirator. (Id.) Even if the court were to accept Defendant's factual contention, however, Defendant points to no authority requiring automatic exclusion of evidence obtained from the possession of another individual, much less an alleged co-conspirator.

Defendant separately argues that evidence obtained from the hard drives should be excluded because "the government failed to produce any evidence of a proper chain of custody." (1st MIL at 9.) This challenge, too, fails. So long as the Government meets its burden of authenticating the hard drives, challenges to chain of custody go only to the weight of the evidence. U.S. v. Shellef, 732 F. Supp. 2d 42, 81 (E.D.N.Y. 2010) (collecting cases). Here, the

Government represents that it will authenticate the hard drives through the testimony of an Italian law enforcement officer involved in their seizure (MIL Opp'n at 14), and so the court finds no reason to exclude the hard drives based on chain of custody.

Accordingly, Defendant's motion to exclude the hard drives is DENIED.

### 5. Italian Advertising Company Documents

Defendant argues that records from an Italian advertising company, LeonardoADV, produced in discovery should be excluded because "no reasonable juror would consider [those records to be] reliable." (1st MIL at 8.) Defendant bases this contention on the absence of letterhead, addresses, date, preparer's name, and other details in those records. (Id.) Defendant's argument appears to be that these records cannot be authenticated. In response, however, the Government represents that it has obtained a foreign business records certification from LeonardoADV and that it will call an employee of that company as a witness "to further authenticate and explain the records." (MIL Opp'n at 14.) These measures are more than sufficient to authenticate the document under Rule 901. See Fed. R. Evid. 901(b)(1) (stating that authentication may be provided by testimony of a knowledgeable witness). Accordingly, Defendant's motion to exclude those records is DENIED.

### C.    Objections to Website Printouts

### 1.    Objections to Internet Archive Printouts

Defendant contends that the court should exclude copies of websites generated through the Internet Archive. (1st MIL at 9-11.) Through a service called the "Wayback Machine," the Internet Archive "allows parties to visit digitally archived Web pages," viewing a particular website as it appeared on a given day. Deborah R. Eltgroth, Best Evidence and the Wayback Machine: Toward a Workable Authentication Standard for Archived Internet Evidence, 78 Fordham L. Rev. 181, 185-86 (Oct. 2009). Defendant argues that printouts of archived websites

12

are inadmissible, as they cannot be properly authenticated. (1st MIL at 9-11.) In response, the Government states that it will authenticate the printouts through in-person testimony by an employee of the Internet Archive "who will explain the nature and creation" of records in that database. (MIL Opp'n at 15.)

Defendant primarily relies on Novak v. Tucows, Inc., No. 06-CV-1909 (JFB) (ARL), 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007), for support. Examining proffered Internet Archive printouts, the court in that case concluded that the documents were insufficiently authenticated under Rule 901 of the Federal Rules of Evidence.[7] Id. at *5. Noting that the archived website data in the Internet Archive was provided by third parties, the court concluded that "information posted on the Wayback Machine is only as valid as the third-party donating the page decides to make it—the authorized owners and managers of the archived websites play no role in ensuring that the material posted in the Wayback Machine accurately represents what was posted on their official websites at the relevant time." Id. Because the proponent of the printouts "proffer[ed] neither testimony nor sworn statements attesting to the authenticity of the contested web page exhibits by any employee of the companies hosting the sites from which plaintiff printed the pages," the court reasoned that the information could not be sufficiently authenticated. Id.

Subsequent to the Novak decision, several courts have concluded that the authentication issues raised in that opinion may be addressed through affidavits from Internet Archive employees. See, e.g., Foster v. Lee, 93 F. Supp. 3d 223, 231-32 (S.D.N.Y. 2015); Martin Trans. Ltd. v. Plattform Advert. Inc., No. 14-CV-2464, 2016 WL 1718862, at *1-2 (D. Kan. Apr. 29,

---

[7] The court also held that several of the printouts constituted inadmissible hearsay, as they contained articles or other statements sought to be admitted for their truth. Novak, 2007 WL 922306, at *5. This portion of the Novak holding does not appear to be at issue here, as the Government states that it "does not intend to offer [the printouts] for their truth, but merely as a representation of what appears on a particular website at a particular time." (MIL Opp'n at 16.)

2016).  One court allowing authentication by this route implicitly acknowledged that the language in Novak would likely require authentication by the website owner, but concluded that "Novak failed to take into account [] the nature of the third party donating the page. . . . [which] simply takes a snapshot of a website at a particular point in time." Abu-Lughod v. Calis, No. 13-CV-2792, 2015 WL 12746198, at *2 (C.D. Cal. May 20, 2015).  That court concluded that authentication concerns could be addressed by an "affidavit of a person with personal knowledge who can attest that the third-party crawler operates to create an unaltered copy of a website as it appears on a given day is sufficient to authenticate evidence from the Wayback Machine." Id.

The court finds that testimony from an Internet Archive employee may be sufficient to address the authentication issues noted by Novak.  Without knowing the substance of that testimony, however, the court cannot properly assess the authentication of the proffered copies of websites.  Accordingly, the court RESERVES DECISION on Defendant's motion to exclude web archive printouts pending testimony purporting to authenticate those documents at trial.

2.    Objections to Website Printouts

On the same basis as his objection to the Internet Archive printouts, Defendant moves to exclude printouts of websites not generated through that website. (1st MIL at 11.)  In response, the Government states that it will offer the testimony of an individual who "personally captured the website (by printing it or taking a screenshot) at the time that he viewed the website."  (MIL Opp'n at 16.)  The proposed testimony directly addresses the authenticity of the proffered evidence. Defendant's motion is therefore DENIED.

**D.    Objections to Inflammatory Language**

Defendant seeks an order precluding the Government from stating that either computers or advertisers in the U.S. were "victimized" by Defendant's alleged malware and scheme.  (1st

14

MIL at 11-13.) Defendant argues that U.S. computers were not "victimized" because the information allegedly obtained from them was "worthless." (Id. at 11-12.) Similarly, he argues that U.S. advertisers were not "victims" because the Government does not allege that Defendant obtained from them anything with "market value." (Id. at 12-13.) Defendant's arguments on this point are unavailing. Defendant's argument in favor of excluding the terms "victim" and "victimized" is, in essence, based on the merits of his case: he argues that the allegations against him do not show that he violated the relevant statutes. The Government is within its rights to take and advocate for a different view of the evidence. Moreover, the court does not view the use of the challenged terms as unduly prejudicial in light of the issues being tried. Cf. MF Global Holdings Ltd., — F. Supp. 3d —, 2017 WL 663565, at *5 (S.D.N.Y. Feb. 3, 2017) ("[C]ourts often prohibit the use of certain pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried." (internal quotation marks and citations omitted)). Accordingly, Defendant's motion to exclude the use of "victim" or "victimized" as to computer and advertisers in the United States is DENIED.

### E.    Objection to References to Certain Advertising Companies

Defendant moves for an order barring evidence or testimony referring to an enumerated list of U.S. companies and government agencies. (2d MIL at 1.) He states that those companies were not mentioned in the discovery material, and seeks exclusion of any mention of those entities "to avoid unfair surprise, confusion of the parties and issues, and to avoid unfair prejudice to Defendant." (Id.) Defendant does not, however, elaborate on the prejudice that he anticipates suffering as a result of mentions of these companies, and so fails to satisfy his burden of making a pre-trial showing that the evidence must be excluded. See Pugh, 162 F. Supp. 3d at 101. Defendant's motion to exclude references to those companies is therefore DENIED.

**F.     Motion to Allow Defendant to Appear in Civilian Clothes**

Defendant requests an order permitting him to appear at trial in civilian clothing and without any restraints. (1st MIL at 13.) The Government does not object. (MIL Opp'n at 16.) Defendant's motion to appear in civilian clothing and without restraints is GRANTED.

**G.     Objections to Business Records and Records Certifications**

      1.     <u>Business Records and Certification by Linode, LLC</u>

Defendant challenges as deficient the business records certification and underlying records provided by Linode, LLC, a virtual private server provider based in New Jersey. (3d MIL at 2-3.) Certifications of domestic business records are governed by Federal Rule of Evidence 902, which states that records of regularly conducted activities, as defined by Rule 803(6)(A)-(C), are self-authenticating when they are accompanied by "a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). In turn, Rule 803(6) states that records of regularly conducted activities are not subject to the prohibition on hearsay evidence where:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) . . .; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Defendant argues that the Linode business records and certification are deficient in multiple respects, which the court addresses separately below.

### a.    *Probative Value of the Terms of Service*

Defendant asserts that the business records sought to be introduced include records of Defendant's alleged violations of Linode's terms of service. (3d MIL at 2.) Defendant contends that "the probative value of the [terms of service] records is very low, and it is substantially outweighed by the risk of prejudice." (Id.) He does not, however, offer any support for this cursory objection or describe the record at issue. The court finds that Defendant has not satisfied his burden of demonstrating that the records should be excluded at this stage. Accordingly, Defendant's motion to exclude records reflecting violations of the terms of service is DENIED.

### b.    *Virtual Image of the Linode Server*

Defendant argues that the "virtual image of the server allegedly leased to [Defendant]" is not a business record because that file was not created in the regular course of business. (Id.) Instead, Defendant alleges that the virtual image was created at the Government's behest. (Id. at 2-3.) If credited as factually accurate, Defendant's assertions may be meritorious. See, e.g., Park W. Radiology v. CareCore Nat'l LLC, 675 F. Supp. 2d 314, 331 (S.D.N.Y. 2009) (holding that business records exception is not available as to a "unique document not kept in the regular course of business"). However, Defendant fails to offer any support for his assertion that the document is not created in the normal course of business. Without further information, the court cannot determine the circumstances under which Linode created the "virtual image" or assess whether it is a "record [] kept in the course of a regularly conducted activity" by that company. See Fed. R. Evid. 803(6)(C). Accordingly, the court DENIES Defendant's motion to exclude the virtual image file. Defendant may renew his objection at trial, and the court will consider the admissibility of the challenged evidence outside the hearing of the jury.

17

### c.    Lack of Trustworthiness

Defendant next challenges the admission of Linode's business records and certification on the basis that Linode was "hacked" on multiple occasions and so its records may "demonstrate a lack of trustworthiness." (3d MTD at 3.) Trustworthiness is the "principal precondition to admission" under the business records exception. Saks Intern., Inc., v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir. 1987). That requirement is generally measured by the circumstances under which the record was prepared, and is frequently cited as a basis for excluding accident or other unusual activity reports which raise concerns about self-serving testimony. See, e.g., United States v. Kaiser, 609 F.3d 556, 574 (2d Cir. 2010) ("The purpose of the rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" (citation omitted)).

While, read most generously, Defendant's argument could be seen as raising general arguments about the trustworthiness of the data to be introduced against him, the concerns he raises are not those contemplated by the rule. Issues with data security do not go to whether documents prepared from that data are self-serving, but instead are properly viewed as going to the weight that should be accorded to the resulting records. Accordingly, Defendant's motion to exclude records produced by Linode for lack of trustworthiness is DENIED.

### d.    Confrontation Clause

Defendant contends that introduction of the Linode records at trial would violate his Confrontation Clause rights under the Sixth Amendment. (3d MIL at 3.) Defendant's argument appears to be essentially derivative of his other points: the records to be introduced against him are "testimonial" because they were made in response to investigation, and not in the normal course of business. (Id.) However, as noted above, Defendant fails to provide the court with any

18

indication as to the basis for his contention that Linode's records were not created in the regular course of business. (See supra Section II.G.1.b.) Absent further support for his contentions, the court cannot conclude at this time that the records are testimonial and so precluded.[8] Cf. United States v. Feliz, 467 F.3d 227, 236 (2d Cir. 2006) ("[W]here a statement is properly determined to be a business record . . . it is not testimonial . . . even where the declarant is aware that it may be available for later use at trial.") Accordingly, Defendant's motion to exclude Linode's records for violation of the Confrontation Clause is DENIED.

### 2.    Foreign Business Records Certifications

Defendant also raises numerous challenges to foreign business records certifications offered by the Government in connection with certain of its proffered exhibits. (See 3d MIL at 3-8.) Foreign business records certifications offered in a criminal case are governed by 18 U.S.C. § 3505. That section mirrors the requirement of Federal Rule of Evidence 803(6), stating:

> a foreign record of regularly conducted activity . . . shall not be excluded as evidence by the hearsay rule if a foreign certification attests that:
>
> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
>
> (B) such record was kept in the course of a regularly conducted business activity;
>
> (C) the business activity made such a record as a regular practice; and
>
> (D) if such record is not the original, such record is a duplicate of the original;

---

[8] Defendant's argument also assumes that the creator of the records will not testify at trial and be subject to cross-examination, which would cure any Confrontation Clause concerns. See Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.")

19

> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a).

### a.    Italian Law Enforcement Records

During discovery, the Government produced received from Italian law enforcement that provide "a summary of business record information." (MIL Opp'n at 13; 1st MIL at 7-8.)  The Government states that it will introduce the underlying business records through foreign business records certifications, while separately introducing the law enforcement summary of those records through testimony by an Italian law enforcement officer. (Id.)  However, Defendant states he has not received any certifications from the businesses that provided Italian law enforcement with the underlying records (3d MIL at 4), nor is the court able to locate such certifications in own review of the docket.  The Government is ORDERED to advise the court as to whether those certifications have been provided to Defendant by July 22, 2017.  The court RESERVES DECISION on the Defendant's motion to exclude those documents at this time.[9]

### b.    FastWeb and Vodafone Certifications

Defendant moves to exclude business records certifications provided by Vodafone and FastWeb on the ground that they were not timely provided in compliance with 18 U.S.C. § 3505(b). (3d MIL at 5-6.)  That subsection states that "at arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity shall provide written notice of that intention to each other party." 18 U.S.C. § 3505(b).  Defendant errs in proposing that automatic exclusion should result from the Government's purported delay.  "The remedy for a violation of Section 3505(b) is to

---

[9] Defendant also objects that the lack of certain details on the face of the law enforcement summary demonstrates that those records lack sufficient indicia of authenticity (1st MIL at 7-8) or trustworthiness (3d MIL at 4.)  For the same reasons stated as to the advertising company records and Linode's business records (see supra Sections II.B.5, II.G.1.c), the court DENIES Defendant's motion to exclude the law enforcement summaries on those bases.

object at trial on the ground of prejudice resulting from the violation." See United States v. Newell, 239 F.3d 917, 921 (7th Cir. 2001). At this point, Defendant has not demonstrated any prejudice resulting from the claimed delay by the Government.

Defendant also seeks exclusion of those certifications on the basis that "[i]t is unclear what business records [those] certification[s] purport[] to authenticate." (3d MIL at 5-6.) Defendant has not, however, articulated why this necessitates exclusion. Defendant's motion to exclude the FastWeb and Vodafone certifications is therefore DENIED.

c.    *Triboo Media SRL Certification*

Defendant argues that the certification provided by Triboo Media SRL ("Triboo") should be excluded because of the informality of that document, which consists of a handwritten certification provided on notebook paper. (3d MIL at 6.) Defendant argues that "[t]he circumstances of execution of this 'certification' indicate a lack of trustworthiness." (Id.) The "trustworthiness" requirement of Section 3505 is commonly read in conjunction with the same requirement imposed by Federal Rule of Evidence 803(6). See, e.g., United States v. Ross, 33 F.3d 1507, 1515 (11th Cir. 1994); United States v. Ekiyor, 90 F. Supp. 3d 735, 737 n.3 (E.D. Mich. 2015). As previously discussed, the trustworthiness element of Rule 803(6) is concerned with whether the information sought to be admitted was prepared under circumstances that suggest self-serving or biased testimony. (See supra Section II.G.1.c.) Defendant's argument regarding the informality of the certification does not implicate those concerns.

Defendant also seeks to exclude the Triboo certification on the basis that it is unclear which records that certification purports to certify. As previously discussed (see supra Section II.G.2.b), Defendant has not provided any justification for seeking exclusion on that basis.

Defendant's motion to exclude the Triboo certification is DENIED accordingly.

21

### d.    TopHost Certification

Defendant moves to exclude the certification provided by the Italian company TopHost on the basis that there is no indication that the employee who executed that certification was authorized to make the representations therein. (3d MIL at 7.) Defendant argues that this demonstrates that the records were not prepared "in the course of a regularly conducted activity." (Id.) This argument is misplaced, however: by its terms, Section 3505 requires that the <u>records</u> underlying the certification must be the result of a regularly conducted business activity. <u>See</u> 18 U.S.C. § 3505(a)(1)(B). The statute separately states that the certification itself must be provided by the "custodian of [the record] or another qualified person." <u>Id.</u> at § 3505(c)(2). As such, there is no requirement that the certification must be prepared in the course of a regularly conducted business activity. Defendant does not provide any reason to believe that the underlying records were not prepared in the course of a regularly conducted activity. Furthermore, Defendant does not provide a basis to conclude that the employee who executed the challenged certification was not qualified to do so. Accordingly, Defendant's motion to exclude the TopHost certification is DENIED.

### e.    Arnoldo Mondadori Editore Certification

Defendant objects to the certification provided by Arnoldo Mondadori Editore on the same grounds discussed in the previous section: he states that the certification was signed by an "employee," potentially indicating that the certification was conducted outside the course of regularly conducted activity. (3d MIL at 8.) This argument fails for the same reasons stated in the previous section. (<u>See</u> <u>supra</u> Section II.G.2.d.)

In addition, Defendant reiterates his earlier argument that the certification should be excluded because it is unclear what records it purports to certify. As noted in previous sections

22

(see supra Section II.G.2.b), Defendant provides no justification for excluding the records certification on that basis.

Accordingly, Defendant's motion to exclude the Arnoldo Mondadori Editore certification is DENIED.

### f.    *PayPal Europe Records*

In addition to challenging foreign business certifications, Defendant argues that the records produced by PayPay Europe demonstrate that the money laundering conspiracy count against him is "frivolous." (3d MIL at 3.) In particular, he argues that those records reflect less than a total of $10,000 in transactions, which he states "do[es] not reach the statutory . . . threshold for extraterritorial application of the money laundering statute." (Id. at 4.) While Defendant makes the cursory argument from this point that the court should "sua sponte" dismiss the money laundering conspiracy count (3d MIL at 4), he does not offer any factual or legal support for his contentions. These bare assertions are far from sufficient to merit dismissal. Defendant's motion to dismiss the money laundering conspiracy count is DENIED accordingly.

### H.    ˙ **Continuing Objections**

Defendant requests that the court issue an order stating that "all evidentiary objections made in [his] in limine motion [are] deemed objections under all applicable provisions of the U.S. Constitution," and that the court will consider any denied motions in limine as continuing objections at trial. (1st MIL at 13.) The Government argues that this constitutes an "improper attempt to circumvent the law of waiver" and argues that "[D]efendant must articulate the basis for his objections in order to preserve them." (MIL Opp'n at 17.) The court agrees: Defendant cannot duck his obligation to make timely objections by stating that all previous arguments should be treated both as continuing and as raising all available constitutional protections. See United States v. Hall, 348 F.2d 837, 843 (2d Cir. 1965) (emphasizing the need to "clearly and

distinctly alert[] the trial judge, and opposing counsel, to every claim intended to be reserved for possible appeal"); cf. also Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." (emphasis added)).  As noted, the court's decision on motions in limine are preliminary, and Defendant may renew his objections as "the case unfolds." Luce, 469 U.S. at 41.  The court will not, however, relieve Defendant of his obligation to raise specific objections by revisiting previous motions sua sponte.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's motions in limine (Dkts. 65, 105, 111) are GRANTED IN PART and DENIED IN PART, with ruling on certain questions RESERVED until trial.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York      NICHOLAS G. GARAUFIS
       July 21, 2017            United States District Judge